UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANICE COLEMAN<br><br>                        Plaintiff,<br><br>v.<br><br>JO ANNE BARNHART,<br><br>                        Defendant. | No. C05-333MJP<br><br>ORDER REMANDING PLAINTIFF'S CASE TO THE ADMINISTRATIVE LAW JUDGE FOR AN AWARD OF BENEFITS |

      This case comes before the Court on a Report and Recommendation from Magistrate Judge Mary Alice Theiler, Plaintiff's Objections, Defendant's Response, and Plaintiff's Reply. Having considered all of the parties' briefing in this case, all relevant papers and documents, as well as oral argument on this matter, the Court declines to adopt the Magistrate's Report and Recommendation. This case is REMANDED to the Administrative Law Judge ("ALJ") for an award of Disability Insurance. Based on the testimony of Plaintiff's treating rheumatologists, her treating family physician, and the expert rheumatologist in this case, as well as Plaintiff's testimony that she received a referral for a rheumatologist in December 1997, the Court finds that the ALJ's decision was not supported by substantial evidence. Because the result is clear from the administrative record, which needs no further development, and because this case has been pending since 1999, the Court sees no need to delay Ms. Coleman's award further. The Court REMANDS this case for an AWARD of benefits and no further administrative proceedings.

ORDER - 1

BACKGROUND

Plaintiff objects to Magistrate Judge Theiler's Report and Recommendation to affirm denial of benefits by the Social Security Administration. Plaintiff initially applied for disability insurance in May 1998, alleging an onset date of May 15, 1997 for rheumatoid arthritis and other disabling conditions. Plaintiff ceased her employment as an office assistant for the Hat Island Community Association in May 1997. Per her work history, Plaintiff's "date last insured" ("DLI") was December 31, 1997. The parties do not dispute that Plaintiff must demonstrate that the onset of her disability took place on or before her DLI. Plaintiff received a diagnosis of rheumatoid arthritis in February 1998 after a referral to a rheumatologist by her primary care physician, but had suffered and sought treatment for a state of compromised health for some time prior to that. Her alleged conditions in 1997 included chronic sinusitis, right knee degenerative arthritis, asthma, depression, fatigue, Achilles tendon problems requiring surgery and resulting in infection, skin rash, menopausal symptoms, leg cramps, irritable bowel syndrome, obesity, and a general lack of stamina or ability to concentrate such that she could no longer perform her job tasks or other day-to-day activities.

Plaintiff has been denied benefits after three administrative hearings, the most recent two in front of ALJ Arthur Joyner. In his latest findings, ALJ Joyner determined that Plaintiff's rheumatoid arthritis was not a disabling impairment as of December 31, 1997, and that Plaintiff's other conditions were not severe impairments on or prior to the date last insured such that she could not perform her work functions. Plaintiff appealed the third and most recent ALJ decision to the Appeals Council, which reviewed Plaintiff's additional submissions of declarations from two treating physicians, but denied Plaintiff's request for review on February 17, 2005. Plaintiff now appeals the final decision of the Appeals Council to this Court.

On October 18, 2005, Magistrate Judge Theiler recommended affirming the denial of benefits. Plaintiff objects to this recommendation and argues that the Administrative Law Judge erred in a variety of ways when evaluating her case. This Court finds that the ALJ erred in discrediting the claimant's treating doctors' and the expert rheumatologists' testimony in favor of the testimony of a

non-expert, non-treating doctor. The Court also finds that the ALJ's failure provide clear, convincing and specific reasons for disregarding Plaintiff's testimony that she visited her family doctor in December 1997 and obtained a referral for a rheumatologist at that time to be an error.

## ANALYSIS

Plaintiff has applied for disability insurance benefits from the Social Security Administration based on her inability to work. A claimant applying for this class of benefits, in addition to proving disability, needs to have accrued a sufficient number of work credits in jobs covered by Social Security to qualify. Plaintiff's earning records demonstrated that she had acquired sufficient coverage to remain insured only through December 31, 1997. Because her eligibility for disability insurance benefits has expired, Plaintiff can no longer obtain benefits by demonstrating current disability, but must show that her disability began on or before her date-last-insured.

**I. Standard of review.**

The scope of review of disability determinations is limited such that a court disturbs the decision only if it is based on legal error or if findings of fact are not supported by substantial evidence. Smith v. Bowen, 849 F.2d 1222, 1124 (9th Cir. 1988), citing 42 U.S.C. 405(g); Sprague v. Bowen, 812 F.2d 1226, 1229 (9th Cir. 1987). In assessing whether a finding is supported by substantial evidence, the court must consider the record as a whole. Id. at 1225, citing Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary. Flaten v. Sec. of Health, 44 F.3d 1453, 1457 (9th Cir. 1995), citing Richardson v. Perales, 402 US 389, 401 (1971). Substantial evidence means "more than a mere scintilla" but "less than a preponderance," i.e. such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

**II. Making the Disability Determination**

ORDER - 3

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. §404.1520 (2005). At the first step, the ALJ determines whether the claimant is gainfully employed. The second step requires the ALJ to determine whether the claimant's alleged impairment is severe. "An impairment of combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Smolen v. Chater, 80 F. 3d 1273, 1290 (9th Cir. 1996). If the impairment is determined to be severe, at the third step the ALJ will look to see whether the impairment is one of the impairments listed in Appendix 1, Subpart P of 20 C.F.R. §404.1520. If the impairment meets or exceeds one of these listed descriptions, the claimant will be found disabled. If claimant's impairment does not meet or exceed one of the listed descriptions, at step four the ALJ will make an inquiry into whether or not the impairment prevents the claimant from performing her past relevant work. If the claimant is not found to be able to do her past relevant work, at the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant's residual functional capacity ("RFC") is such that she could do other work found in sufficient quantity in the national economy. 20 C.F.R. §404.1520 (2005).

In his July 31, 2004, decision in this case, the ALJ found that Ms. Coleman had not been gainfully employed since the alleged onset date of her disability in May 1997. Proceeding to step two, the ALJ found that none of Ms. Coleman's impairments were sufficiently severe to qualify as a disability before her date last insured. Having reached this result, the ALJ proceeded no further in his analysis. The Court finds that this decision was not based on substantial evidence. The overwhelming weight of medical testimony in this matter supports a finding that Ms. Coleman's impairment was a severe one as of December 1997, and that her disability is equal to or exceeds one listed at 1.02 of Subpart P, Appendix I of 20 C.F.R. §404.1520. (AR at 296-297). Because this result is clear from the administrative record, the Court remands this case only for an award of benefits.

ORDER - 4

**III. The ALJ's Evaluation of the Medical Evidence**

Having reviewed the entire administrative record in this case, the Court finds that the Administrative Law Judge in this matter erred by giving very little weight to Ms. Coleman's treating physician's, treating rheumatologists', and the expert rheumatologist's opinions. Instead, the ALJ accorded great weight to the absence of medical records during the time period directly preceding Ms. Coleman's DLI and to the opinion of Dr. Lindberg, who neither treated nor examined Ms. Coleman and who is not a rheumatologist.

Generally, greater weight should be accorded the opinion of a treating physician over that of a non-treating physician. Andrews v. Shalala, 53 F. 3d 1035, 1041 (9th Cir. 1995). However, the Court recognizes that a treating physician's opinion is not dispositive as to whether or not a claimant was disabled. Thomas v. Barnhart, 278 F. 3d 947, 956 (9th Cir. 2002). Where a non-treating physician's opinion differs from that of the treating physician, the ALJ may credit the non-treating physician's opinion if he cites specific, legitimate reasons for his rejection of the treating physician's opinion that are supported by other evidence in the record. Andrews, 53 F. 3d at 1041.

In this case, the claimant presented declarations from Dr. Repnik, who was her treating primary care physician, Dr. Schmitt, who was her treating rheumatologist, and Dr. Jiminez, who was also her treating rheumatologist. All of these doctors agreed that Ms. Coleman was disabled due to the early onset symptoms of rheumatoid arthritis prior to December 31, 2006. (Administrative Record "AR" at 333, 417-418, 483-483, 486 ). The two rheumatologists who treated Ms. Coleman found that this was more likely than not the case, to a reasonable degree of medical certainty. (Id.) In addition, Dr. Wilkins, an expert rheumatologist who offered his opinion at the behest of the Social Security Commissioner, agreed that by late December 1997, Ms. Coleman would have been unable to hold a full-time job that required solely light or sedentary work. (AR at 528-529). His opinion took into account not only the "profound" fatigue-ability that can accompany early stages of rheumatoid arthritis, but also Ms. Coleman's obesity. (AR at 527).

ORDER - 5

The only doctor who offered a dissenting opinion as to the onset date of Ms. Coleman's disability was Dr. Lindberg, who also testified at the request of the Commissioner and who never treated nor examined Ms. Coleman, nor was he a rheumatologist. The ALJ credited Dr. Lindberg's opinion because he viewed it as more consistent with the claimant's whole medical record than the testimony of the other four doctors. The ALJ found that claimant's rheumatoid arthritis had a "sudden onset" in late January 1998. In support of this conclusion, the ALJ relied on the testimony of Dr. Lindberg and discredited Ms. Coleman's testimony about her ongoing fatigue and pain, especially during the last months of 1997. While an ALJ is entitled to draw inferences from a lack of medical care for a condition alleged by a claimant, medical and lay testimony are more important than an absence of medical documentation. <u>Flaten v. Secretary of Health and Human Services</u>, 44 F. 3d 1453, 1464 (9th Cir. 1995).

Plaintiff's last formal visit to the doctor was in October 1, 1997. There are no notes from that visit that reflect the fact that Ms. Coleman was experiencing fatigue. The ALJ found the lack of medical records inconsistent with Ms. Coleman's testimony and seems to have discredited Ms. Coleman's testimony about her symptoms on this basis. However, the ALJ ignored the fact that Ms. Coleman testified during her second administrative hearing that she accompanied her husband to a doctor's appointment that he had with Dr. Repnik in December of 1997. (AR at 511). Although it was technically her husband's medical appointment, Ms. Coleman stated that she complained to Dr. Repnik at that time about her ongoing fatigue. (Id.) She also noted that in order to get a referral to a rheumatologist in February (the first time she saw Dr. Schmitt) her insurance would have required her to have talked with Dr. Repnik about such a referral in December of 1997. (Id). This information would not have appeared in Ms. Coleman's medical record because it was an informal communication with her physician during her husband's check-up. However, this conversation is a crucial one that the ALJ gave no reason for discrediting. An ALJ must give "clear and convincing" reasons for rejecting a claimant's testimony. <u>Lester v. Chater</u>, 81 F. 3d 821, 834 (9th Cir. 1996). While the ALJ gave sufficient reasons for rejecting Ms. Coleman's testimony regarding her symptoms up until

ORDER - 6

October of 1997, he failed to justify disregarding her testimony about her December visit to Dr. Repnik. There is nothing in the record that would lead this Court to believe that Ms. Coleman was not truthful about this visit. In the absence of an explicit finding of non-credibility by the ALJ, the Court credits the claimant's testimony about her December visit to Dr. Repnik's office.

Here, in addition to discrediting Ms. Coleman's testimony, the ALJ discredited the testimony of four doctors, including three rheumatologists and three treating physicians, because he felt that the testimony of one non-treating, non-examining doctor who is not a rheumatologist was more consistent with the absence of documentation of claimant's alleged disability in the last months of 1997. However, Dr. Lindberg's testimony about the nature of rheumatoid arthritis, upon which the ALJ's opinion was based, directly contradicts that of the three rheumatologists involved in this case. In response to counsel for Ms. Coleman's inquiry as to whether rheumatoid arthritis is, "typically something that happens very quickly. . .," Dr. Lindberg replied, "[y]es, it can come on. It's a systemic illness, and we don't know exactly how it develops. But it certainly can come on in a relatively short period of time, and then of course be pervasive." (AR at 547). This testimony is in direct conflict with the opinion of all three rheumatologists who testified in this matter that a sudden onset of rheumatoid arthritis is extremely rare and probably did not occur in this case. (AR at 417, 485-486, 527-528). ALJ Joyner discounted these doctors' opinions because he stated that they were based on Ms. Coleman's subjective complaints regarding how she felt in the last few months of 1997. On closer examination, however, these opinions were also based on the severity of symptoms with which Ms. Coleman presented at her first appointment with Dr. Schmitt (AR at 484, 486). The severity of Ms. Coleman's symptoms in February 1998 constitutes an objective sign in the medical evidence that should not have been disregarded by the ALJ. 20 C.F.R. §404.1528.

The overwhelming weight of medical testimony in this case runs counter to Dr. Lindberg's description of rheumatoid arthritis and Ms. Coleman's disability status in December 1997. For this reason, it was error for the ALJ to credit Dr. Lindberg's medical opinion over that of doctors Repnik, Schmitt, Jiminez, and Wilkins. Although a nonexamining medical advisor's testimony may be

ORDER - 7

credited over that of a treating physician's, this can only be the case where there is other evidence in the record that supports the opinion of the nonexamining physician. <u>Lester v. Chater</u>, 81 F. 3d at 832 (9th Cir. 1996). Here, the ALJ relied on a *lack* of medical evidence to support his reliance on the testimony of Dr. Lindberg. Taken in combination, the lack of medical evidence from late 1997 and the testimony of Dr. Lindberg do not constitute substantial evidence warranting the rejection of three treating physicians' medical opinions in this matter. In <u>Lester</u>, the Ninth Circuit found that the ALJ's rejection of the opinions of a treating physician and an examining physician was unwarranted when that rejection was based solely on the testimony of a nonexamining medical advisor and speculation that the other doctors misrepresented the severity of their patient's mental illness. <u>Id.</u> This case presents a similar scenario because Dr. Lindberg's and the ALJ's evaluation that Ms. Coleman was not disabled in late 1997 is based on a lack of a medical record and speculation about what that might mean. Missing from both of their analyses, however, is recognition that the claimant in this matter lived on an island, from whence it was difficult to access medical care. If she was, in fact, experiencing debilitating fatigue associated with the early onset of rheumatoid arthritis, as her treating doctors and the expert rheumatologist in this case suspect, she would have been much less likely to make the journey to the mainland for medical care. Because it is not supported by substantial evidence, the ALJ's rejection of claimant's three treating physicians' opinions and the opinion of Dr. Wilkins cannot be affirmed by this Court.

**IV. Award of Benefits**

If the ALJ had credited the medical testimony of doctors Repnik, Schmitt, Jiminez, and Wilkins in this matter, he would have found that Ms. Coleman disability was severe enough to satisfy step two of his analysis at least as early as the date on which Ms. Coleman visited Dr. Repnik with her husband in December 1997. Additionally, had the ALJ credited Dr. Jiminez's testimony, in particular, at step three he would have found that Ms. Coleman's condition met or exceeded disability listing 1.02 of Appendix I of Subpart P of 20 C.F.R. §404.1520, which describes a major dysfunction of joints (AR at 296-297). Having satisfied step three of the disability analysis, it would have been

ORDER - 8

unnecessary for the ALJ to make RFC determinations under steps four or five. Because the determination of Ms. Coleman's disability prior to December 31, 1997 is clear from the administrative record before this Court and it is not necessary to further develop the record in this matter, the Court remands this case for an award of benefits and for no other administrative proceedings. <u>Varney v. Secretary of Health and Human Services</u>, 859 F. 2d 1396, 1400 (9th Cir. 1988).

## CONCLUSION

ALJ Joyner erred by providing no clear and convincing rationale for discrediting Ms. Coleman's testimony that she had visited Dr. Repnik with her husband in December 1997 and received a referral to see a rheumatologist at that time. The Court credits Ms. Coleman's testimony on this point. The ALJ in this matter also erred by disregarding the overwhelming weight of medical testimony supporting the fact that Ms. Coleman was severely disabled from her rheumatoid arthritis at least as early as December 1997. Had the ALJ credited Ms. Coleman's three treating physicians' testimony, as well as that of the expert rheumatologist in this matter, the ALJ would have found that Ms. Coleman's disability met or exceeded the disability listed at 1.02 of Appendix I of Subpart P of 20 C.F.R. §404.1520 before December 31, 1997. Because this result is clear from the administrative record before this Court, this case is REMANDED for an award of benefits.

Dated this 27th day of February, 2006.

Marsha J. Pechman
United States District Judge

ORDER - 9